I guess we're hearing both of them together. I don't know which side you want to have go first. You've got 20 minutes for both cases, and I don't care who goes first. Anybody have a preference? Pardon me? No, it doesn't really matter. Just divide up your time, I guess. The MILES v. OKUN case is regarding the preemption issue. Right. Is that what you're doing first? No. This is the OKUN v. MILES of the involuntary petition. Okay, good. May I please? You're representing OKUN. Yes, I'm representing the appellants. May it please the Court, I'm going to reserve five minutes for rebuttal. These ten consolidated appeals were a result of the arose from the dismissal orders of ten involuntary petitions filed in April of 2001. Let me ask you something about those orders. The way I understood it, the Bankruptcy Court did not dismiss OKUN's involuntary bankruptcy filing against MILES merely because of bad faith. The Bankruptcy Court dismissed the involuntary bankruptcy that OKUN filed against MILES because OKUN did not prove that MILES was not paying his debts as they became due. And then the Bankruptcy Court found bad faith on top of that because there was no investigation and there was harassment designed to affect the ongoing state lawsuit. Have I got that right? I'm not sure, Your Honor, because we have to distinguish between the cases. If we're just talking about the MILES case, then what the Bankruptcy Court did was found that there was no bad faith in the MILES case. And as for the other nine, Judge Kleinfeld is accurate. The other nine is where the bad faith was found, correct. But it was additional to other grounds for dismissal. There were three grounds for dismissal. In the other nine? Right. Yes. So is there any reason why are we considering the bad faith issue separately now? Why does it matter? Well, because once a bad faith is determined, then there's – then the alleged debtors are entitled to – Well, that's true, but why does it matter whether it's a ground for dismissal as opposed to simply – we have two grounds for dismissal. So there may have to be a bad faith adjudication in order to deal with the damages action, but why does there need to be bad faith as a reason for dismissing? Yeah, you're right, Your Honor. We have three grounds for dismissals. This Court could affirm on any of those grounds. However, the bad faith determination was made – Suppose we did. Suppose we just said the other two grounds are right. There's no reason to reach the third one. Affirm the end. Then what would happen? Well, then there would be no way to appeal the bad faith decision. There would be no way for our side to appeal the bad faith determination. What is the status of the – of any damages action under 303i? It's all state. Okay. And it's appeal. Presumably, you would go back, you would get a damages judgment, and then you'd appeal. Well, Your Honor, any interlocutory order that's made before a final order is made is merged with the final order. So if you have an interlocutory order made, then a final order made, especially when it's made on the – you know, it's one of the grounds of dismissal, it's merged. Once that appeal comes up and comes down, there's no longer any right to an appeal. I don't actually see why we should get any further. I mean, if Okun didn't prove that Miles was failing his debts as they became due, then it seems like the bankruptcy court is fine in dismissing the involuntary bankruptcy and we're done. Well, Your Honor, I wanted to address that issue also with respect to whether they were able to approve that there was generally not paying their debts become due. They don't have to prove anything. Okun has to prove. Well, Your Honor, this was – If a purported creditor pushes or files a petition that forces a purported debtor into involuntary bankruptcy, it's the purported creditor's problem, his burden, to prove that the debtor's not paying his debts when they become due. Absolutely. No question about that. But remember, these dismissals were done in a summary judgment motion with respect to the 12B6 motion. And the 12B6 motion – Wait a minute. You just said two things that conflict with each other. You said in a summary judgment motion, and then you said 12B6 motion. Treat it as a summary judgment motion. I apologize. Okay. Treat it as a summary judgment motion. That means if there was any evidence that they weren't paying their debts as they became due, Okun could have put it in, affidavit, declaration, whatever. Your Honor, the moving party in a – in a summary judgment motion has to meet their burden of production before the nonmoving party has to put any evidence in. No, that's not true. The – under sellotext, the party with the burden of proof has to put in evidence. All the moving party has to do if it does not have the burden of proof is point to the issue. That's what the Supreme Court said. I agree. And if they did point to documents that would show – No, they don't have to point to documents. All they have to do is say, we don't have the burden of proof on this issue. The other side does. And we don't think they have any proof. And the Supreme Court said that's good enough. Well – So was there any proof? Well, it appears like – what it appears like is that you were – you used the bankruptcy mechanism or your client did to obtain discovery for purposes of the State court proceeding. That's what it looks like. There's been no allegation as to that fact. There's been no proof up to that fact. I didn't put any evidence in as to their inability to make their payments. But the burden of proof for bad faith is on the alleged debtors. They have to prove bad faith, not us. Not for bad faith, but we were just talking not about bad faith. I'm sorry? What we were discussing just now was not bad faith. It was the other grounds for dismissal. Well, she – I'm sorry. Judge Wardsall was discussing bad faith, and I wanted to respond to her question. I was actually discussing the other issue. But as I understand it, you didn't appeal the other issue. I mean, you didn't appeal the other grounds for dismissal, did you? Yes, I appealed all of them. You appealed all grounds? Yes. I thought this was just on the ground of the bad faith. No, Your Honor. I wanted to focus on the bad faith issue because there's some subsequent events that have occurred that may not be wise, I mean, at that time, to vacate the entire dismissal orders because then that would throw –  Yes. But at the time, you look at both the bad faith and the other grounds for dismissal at the time that you filed the bankruptcy petitions in the bankruptcy court, right? In other words, bad faith has to determine at the time the petitions were filed. That's correct. Right. So what you knew then was nothing about the nine companies, right? No, that's not true. Well, what did you put before the judge? Well, again, I believe, responding to Judge Kleinfeld's question, that this Court in Nissan says that you cannot just merely allege that they cannot make a – they can't show their burden of proof and then expect them to come up with all of their evidence. That's – the Court in Nissan basically said that's a cheap substitute for discovery, and we're not going to allow you to use the Silatex case as grounds for just basically forcing the other side. That's the case where the Ninth Circuit has overruled the Supreme Court. Nissan? I'm sorry? No. No. Because the Silatex case doesn't say that, and that's what this – when this Court interpreted the Silatex case – Those words. When this Court interpreted the Silatex case, basically they said that the Silatex case doesn't allow you to just say – Look, did you put in any proof that Miles wasn't – and these companies weren't paying their debts when they became due? Sure. There was lots of – Where is it in the excerpts? In the excerpts, it's on – it's in Volume 3, Tab 25, where it shows all the debts with respect to the entities and Miles and the rest. Wasn't there a problem that you did not actually attach it to your summary judgment papers and you kept telling the judge that it was somewhere else and that you could bring it in at some other point? No, Your Honor. That's my recollection. With respect to the debts? I'm sorry? With respect to the debts, is that what you mean? That's my understanding, that he – that essentially at the time of the hearing, you didn't have the information put together, and it was – you were referring him to the motion to appoint a trustee, and he said that he – you know, he didn't have to look somewhere else for the information, which is probably true. In other words, there was a procedural problem, as I recall. Well, with respect to the debts, they're all outlined in the opposition. That – you know, it's not all of them, of course, because there was a discovery. I mean, remember, these motions were filed less than a month after the involuntary motions were filed. Look, this is your problem, not their problem. Bankruptcy is ordinarily filed by the bankrupt to get relief from his debts. It is also possible, though it is unusual, for a creditor to force a debtor into bankruptcy, essentially to get control over the debtor's assets, even though the debtor is trying to avoid bankruptcy. When that's done, the creditor has to have his ducks in a row when he files, and he has no business filing if he can't show right then and there on filing day that the debtor isn't paying his debts. So all this talk about how it was fast, it was a 12B6 converted to summary judgment, we didn't have enough discovery, it's all totally irrelevant. It's all your fault. No, it's not that we didn't have proof. Remember, the only requirements to filing an involuntary petition is basically that you have to have three petitioning creditors with debts that are not subject to a bona fide dispute above $10,000. They met those requirements. And now that now, after that debt is filed, then they have the opportunity to conduct discovery and do whatever they want to do with respect to proving in a trial that they're not generally paying the debts that become due. You made a representation to me just a minute ago that you appealed the other grounds for dismissal, and I'm looking at your blue brief, your statement of the issues. Each one of those is a complaint about the bad faith finding. I don't see any appeal of the other issues. Well, Your Honor, we appealed the entire dismissal order. Well, in addition, I recall, although I can't find it at the moment, there is a statement in one of your two briefs that says specifically that you're not appealing the dismissal except as necessary to reach – except if it's necessary to reach the bad faith ground. That's correct, Your Honor. That's why I'm happy. You're not appealing the dismissal except perhaps on the bad faith ground. That's what we've been asking you. No, I'm sorry. Your Honor, what my position was, was that with respect to dismissal orders, if this Court finds it necessary in order to reverse the bad faith finding to vacate all the dismissal orders, you might want to affirm the dismissal orders on the other two grounds, not the bad faith grounds. I'm basically saying if this Court believes that you're going to have to vacate the entire dismissal order before you can get to the bad faith grounds, then I – then we were requesting that the entire dismissal order be vacated. I stated that in my blue brief specifically, that that was – But you didn't say that. It's – I have to – Okay. Well, maybe you got their argument. I mean, but it is stated specifically. It's a pure brief. You must know it better than we do. Well, I could find it. I mean, I just need a chance to get it and find it. But it is stated specifically. Why don't you do that and bring it to rebuttal? Should we go ahead and hear from Miles? Yeah. Let's hear from Miles now. Well, we'll hear from Miles. You can save your remaining eight minutes. Thank you. Please, the Court. I am Paul Couchot, Winthrop Couchot, counsel for the appellees, both Rodney and Ann Miles individually and the related entities. Your Honor, Your Honors. Can you tell us why there's any reason to reach the bad faith dismissal order? Well, the reason is, I would agree with Mr. Campbell in that sense, is that that is something that the judge found and that we litigated in the bankruptcy court. The judge took quite a bit of time to find it. I understand that. But you don't have to dismiss something three times. Once is enough. Well, the reason – But he made the finding as part of his final judgment of dismissal. So your opponent says that if he doesn't appeal it now, he can't appeal it after damages are ascertained. Is that correct? Well, I would assume that the finding in the dismissal order would be law of the case with respect to the damage face. So in that sense, I would have to agree with him. I mean, it's certainly not necessarily – it's not necessary to dismiss the case because there is other grounds, as the panel has pointed out. And obviously, I do not want to see any vacating of the dismissal order. And I don't think you need the bad faith finding to do that. I mean, that's very clear. Do you agree that there can be a limited appeal of just the grounds for – of bad faith because it's now been merged into the final judgment? No. I would agree that this Court can uphold Judge Barr's order on any grounds that Judge Barr put forward as grounds. The bad faith would be law of the case, and then it would be part of the finding. And she – whoever the bankruptcy judge is, obviously, they wanted this to be litigated and not reach the damages unless they had to. Right. I think Judge Barr would not want to relitigate – I don't think any of the parties would want to relitigate the bad faith issue in the damage phase. I think that, at least from our perspective, that should be the law of the case. We should go into the damage phase at this point in time. And it could have been done differently, but that's not how it was done. Has the question of whether a dismissal of an involuntary bankruptcy and bad faith is proper ever been litigated in this case? Yes. Oh, absolutely. I didn't see anything in the briefs about it. Neither side seemed to be disagreeing. Whether or not – Whether or not – It's grounds for dismissal? Yes. Absolutely. It was one of the grounds in our moving papers that the bankruptcy was filed in bad faith. I understand that. But the legal issue of whether this is an appropriate ground for dismissal. Oh, I'm sorry. I misunderstood your question. I do not believe that when we moved for dismissal that the opposing side took the position that – Nobody's ever litigated that question, really. It was a given. Including in the briefs before us. It was a given in front of the judge. Right. It could have been assumed. It was assumed. It was never argued that it was inappropriate grounds for dismissal at the trial level. That's right. Is anyone arguing it's inappropriate grounds for dismissal now? No. Not that I'm aware of. I mean, I obviously wouldn't speak for Mr. Campbell. Okay. It's a legal question. I mean, we can certainly decide it. I understand that. And it's something that I'm not – if I seem ill-prepared to talk about it, it's because it hasn't been raised. And I haven't thought about it. Right. I've thought about just about everything else. And I would like to address the bad faith. I would like to address the debtor's position, the alleged debtor's position, former alleged debtor's position, that this was always, always a proliferation of a private dispute between neighbors and former business partners. Just out of curiosity, do they still live next door to each other? They do. They do. I asked that question. Unless they moved in the last 48 hours. Well, suppose that a judge found that the involuntary petition was indeed filed in bad faith, but the debtor was not paying his debts as they became due. I don't know quite what bad faith would mean. There was – oh, I know what it would mean, same as in this case. The creditor didn't do any serious investigation. It was just a shot in the dark to tie up the bankrupt's assets. But it turned out that, in fact, the creditor was right. The debtor wasn't paying his debts as they became due, and there's no way that he could with his assets compared to his debts. So that ground for an involuntary bankruptcy was good, but it was also in bad faith. Could the judge dismiss it? The judge should dismiss it because it's the state of the mind of the creditor at the time that they filed. Is there authority for that? It's an objective circumstance. I believe that the Wavelength case talks about that, the Ninth Circuit battle. There is definitely authority. I'm not positive that that's necessarily the case, but it's basically what a creditor would do with the knowledge that he had at the time of the filing of the petition. Well, suppose he – to expand the hypothetical. Suppose he did have the information, had done the investigation, and it was true that the person was not paying in bad faith – not paying when due. I couldn't. But, in fact, this was all being done as a harassment action and as part of an attempt to gain a – an advantage in the State court litigation. Could he then dismiss it for bad faith? I think that would depend on the legal standard that the Court utilized, whether it was a subjective test or an objective test. Under an objective test, arguably, if it was appropriate under the objective circumstances, that might be the case. How does this – are you arguing for a – that this bad faith dismissal under these circumstances is under Section 707, or is it under Section 105, or is it an inherent sanction, or what is it? Wouldn't that matter in terms of what standard you come up with? Well, it's definitely grounds for dismissal under bad faith because it's referenced in Section 303i. Not as a reason for dismissal, though. So where's the authority for dismissal coming from? It's case law. Case law in the Ninth Circuit. Well, there is no case law in the Ninth Circuit saying that. Not in involuntaries, but there's case law in the Ninth Circuit that pleadings filed in bankruptcy need to be filed in good faith, both on the voluntary side and the involuntary side, particularly in the Chapter 13 area. That really – that's why I'm asking you the source because it might matter. The source might have something to do with what standard we come up with, whether it's 105, whether it's the parallel to Rule 11, whether it's the inherent authority of the Court to impose sanctions. What is it? Well – Whether it's 707 for a dismissal for cause? It's case law requires that all pleadings be filed in good faith in bankruptcies. I mean, I cannot cite you the specific cases. That does not imply necessarily that bad faith alone is sufficient ground for dismissal. That proposition would imply that sanctions might be appropriate for bad faith. But if it turned out that the involuntary bankruptcy was justified, but that it was also filed in bad faith, I'm not sure that that proposition, though true, would be enough for you. I guess my argument would be respectfully that 303i implicitly provides grounds for dismissal solely on bad faith grounds. Could you read the words that you think do that? 303i says, If the Court dismisses a petition under this section other than on consent of all Petitioners and the Debtor, and if the Debtor does not waive the right to judgment under this section, the Court may grant judgment. And then 303i-2 says, Against any Petitioner that filed the petition in bad faith for any damages approximately caused by such filing or punitive damages. That leads me about where I was before you read it. And I said it implicitly, Your Honor. Again, we haven't addressed this. In this case, it's not a problem because, in one sense, except a procedural problem, because there was grounds for dismissing, and the bad faith was sort of on top of, it was in applying those grounds that the bad faith was found. And so 303i does apply, and really the only question is whether it has to be a ground for dismissal or has to be, or is only a ground for damages. It doesn't really matter much. But it would matter in a case in which there was a basis for dismissal. There was not otherwise a basis for dismissal. And that's why I'm trying to locate somewhere in the Bankruptcy Code the authority because, quite aside from the question of whether you could do it at all, it might have a lot to do with what standard you apply, whether it's purely subjective, objective, so on. I understand. I mean, I understand the question. Well, I mean, as far as the specific statute, no, I don't. I'm just really troubled by the idea that when a petition is objectively proper, nevertheless, it should be dismissed because of subjective motivations of the petitioner. And it seems like that's just an invitation to a highly unreliable fact-finding. And I would respectfully point out that that's not the situation in the case at hand. Now, in the case at hand, I understand it's not. Was there any evidence that was put before the bankruptcy court in a timely manner, one way or the other, on whether Miles and the nine entities were paying their just debts as they became due? Absolutely. Absolutely. What evidence was there? Where should we look? In the moving papers, Mr. Miles, in each declaration supporting each of the ten cases, made a statement that they are paying the debts, the undisputed debts, as they come due. And that's what the statute says, the undisputed debts, because one thing we haven't focused on is that the Okun's claims were disputed, but all ten of those. And I can hear you. Sure. His position was, I'm paying the debts as they become due, except for Okun, which I don't think I owe the money. Exactly. Because what he also did was, in all ten declarations, was as Exhibit 1 and 2 to his declarations, he filed the State – he had attached the State court complaint and the comprehensive answer, which, by the way, was not a blanket of affirmative defenses. If you read the affirmative defenses, each affirmative defense refers to which specific cause of action these are referring to, and that's a misstatement. Incidentally, Miles keeps getting slammed by the State courts in Okun's proceedings. Is anything in State courts, race judicata, or collateral estoppel for any of the issues that are before us? It all happened after. It all happened after these decisions. It couldn't possibly be, in my mind. It's irrelevant. And if you read – But also, there's no – I thought in California you don't have race judicata until the appeals are done and they've been done. Well, that's a good point. And I think – hopefully we pointed that out. But in California, a California State court order, unlike a Federal order, is not final until the appeals are exhausted. Let me ask you – to change the subject a little. What is – what about an advice of counsel exception standard or so on? Is there support for an advice of counsel defense with regard to 3L3I damages? In the Ninth Circuit? Or – Well, first of all, in the Ninth Circuit, there's no support. And, in fact, in the Ninth Circuit, there's a case law under 3062H, which also is a very similar fundamental bankruptcy code statute where it's been expressly rejected, and that's the Taylor case. That's another case that basically is when you – they will specifically award punitive damages for a willful violation of the State, just similar to a bad faith filing in bankruptcy. And the Ninth Circuit said, no, that's a fundamental protection because how important the bankruptcy – the automatic State is in bankruptcy. And I would argue the same issue here. You have – you know, the ease that you can put someone into an involuntary, you better be careful, and you shouldn't be able to, you know, hide behind your attorney in the event of that. And I would say – I can understand that for dismissal, but what about for sanctions? For – it deals with sanctions. It was dealing with sanctions, I believe. And, in fact, all the cases dealing with advice of counsel deal with the penalty phase, the punitive phase of it, and it deals with it in the sense of reduction. And all of them that we have seen, there's been no case that says where there's ill will or subjective bad faith, can they hide behind their attorneys. And they also – the Silverman case that we cite says that when there is a disregard, a reckless disregard of the statutory requirements, that defense is not available. So there's no cases out there that would support that defense in this case. And that's also cited in the Wavelength case. And getting back to an earlier question about case law providing grounds for dismissal in bad faith, we do have that in our moving papers. On tab 23, page 0391, it's in volume 3. It says the involuntary was filed in bad faith, and we have a string set of cases that provide support to the notion that all bankruptcy cases have a requirement that a case be filed in good faith. And then when a bankruptcy court determines that a bankruptcy case was not filed in good faith, the court may dismiss that case. And the cite on that is in Ray Eisen, 14 F. 3rd, 469, 9th Circuit, 1994. The case law recognizing the bad faith, the advice of counsel in bad faith, really only applies in a situation where there is no ill will or misuse on behalf of the petitioning creditors and where there is compliance with the statutory requirements. That's pretty clear from what I've read in all the cases, in the Silverman case, in Wavelength, and in the Tycor, I believe it's Tycor case. And those are the cases that we cited and I believe that are applicable. There's only one case that they ever even applied the defense, and there's no factual discussions at all, and that, I believe, is the Walden case. The Walden case is the only case, and there's no factual, there's no analysis. It's a Fifth Circuit case. The 303i allows punitive damages, doesn't it? Yes, it does. And you would apply punitive damages to a plaintiff who was not himself, who went to a lawyer and said, what should I do, and the lawyer said, this is how to do it? That might be a case where the defense might be available if it were recognized, but that's not the case here. In this case here, there was, long before the bankruptcy attorney got involved, these people had an agenda. They wanted to liquidate these partnerships. They asked Mr. Miles to liquidate them. They filed the State court dissolution action. I understand that, but then they went to a lawyer and said, let's assume, I don't know if the record is on this, you know, we're interested in liquidating the partnership. Could we do it by filing the petitions? Or how can we do it? And the lawyer says, well, you can file some involuntary bankruptcy petitions and doesn't tell them that it's inappropriate to do that. You can only have punitive damages against them. Well, I think that's, first of all, in the abstract, I still think so. It goes back to the Ninth Circuit case on a willful violation without a max stay, where an attorney said it was okay, and the client did it believing that he could. And he argued divisive counsel was the same purpose. I mean, there's not. But punitive damages aren't available for that. I believe they are. I believe they are. And that's my point. There's an analogy there. That would be 362H. And by the way, the decide on Taylor is 884S.2478. I could read the statute for you. That's okay. I thought I had written an opinion saying they weren't, but I will check. Okay. The other point I would make in answer to your question, that that's not the case here. If you look at Mrs. Oken's testimony in the evidentiary hearing on August 31st, she said the attorneys disclosed, they went over the statutory requirements and they talked about the bad faith issue. They disclosed the risk of the bad faith issue. They warned her it would be a difficult case and that they wanted her to make the ultimate decision. So in this situation, it's, they were far along the lines on their agenda and they were. Do you happen to know where Henderson and Red Heart is? Yes, I do. I do. It is, please bear with me a minute. I know it's ER, it's volume 10, ER tab 86, and it's pages 2014 through 2016. Thank you. You're welcome. And then later on in that same volume, Mr. Mothy also says that in his testimony, he was the attorney, that it was important for him to disclose that risk to the Oken's. So this is not a situation. There is also testimony that Mrs. Oken's has an MBA. I believe there's testimony that Dr. Oken went to law school. He's a doctor. These are sophisticated people. They were proactive in these cases long before the bankruptcy filed. And this would be the last case in the world I would think would be appropriate to recognize and advise the counsel defense. Should I continue? Should we do the preemption? You've got one minute left. How much time? One minute? Yes. Okay. With respect to due process, there's been no violation of due process. There's been no deprivation of life, liberty, or property. This is the first time they've raised it on appeal. They had three hearings on this issue. They didn't file it. The problem is what you hit in the head. They didn't file any evidence in the initial going because there was no evidence. They didn't follow up with any because there was nothing to follow up with. What we have here is a case of people that aren't willing to be accountable for their actions. They want to blame Mr. Miles for this ill decision, for this horrific decision that they made to file these cases. They want to blame Mr. Miles. They want to blame Judge Barr, the trial judge. They want to blame their former attorneys. And they want to blame opposing counsel. But they won't take responsibility, and this is a case where it just cries for the type of punishment and deterrent factor that 303i cries out for. What advantage was there to them in filing these petitions? I'm sorry. What advantage did they gain by filing these petitions? Well, if you read Mrs. Open's testimony in a similar area that I talked about, what they wanted to find out, they were frustrated because, well, they wanted the first thing they did was file a motion to appoint a trustee who would have taken over Mr. Miles's case and then taken over control of everything, and they would have been able to at least have some influence on the liquidation process. But Mrs. Open also says that they wanted to file to get disclosure of assets to justify the continued prosecution of the State court, essentially to value the State court litigation because they had no idea what his assets were. So it was a shot in the dark. They basically utilized the super remedies in the bankruptcy court without fulfilling the statutory requirements that get them. But that would have been the advantage. It was a supplement to the State court. They were frustrated in the sense that they had writs of attachment as in TROs, but they couldn't get at least they didn't try to get a receiver or anything like that. Our point would be that. What you do in Alaska for this kind of dispute is you litigate in superior court, and if you can't collect by an ordinary levy of execution, you can have a debtor's examination where he has to tell where his assets are, and then the court makes orders actually during the debtor's examination as it goes on. There's also a procedure available for imposing some sort of receivership during the pendency of the litigation. Is there something like that in California? Yeah. If you read Mr. Muld, Mr. Dahl's testimony, it's, again, 10 ER tab 86, page 1994. He talks about all the remedies they could have. He's the State court attorney for the entities that I represent, and he basically said they could have done all what they're trying to do in the State court. What I describe as available in the State court. Well, there's a super procedure for promissory notes. He talks about, upon appropriate showing, you can get assets. When you're pleading punitive damages, you can get asset disclosures. He talks about that you can go in for, on the partnership properties, they could have went in for a receiver. He talks about, he basically, and he also talks about, quite frankly, that Mr. Miles was very cooperative and willing to stipulate to a lot of the concerns that they had. He was willing to agree not to refinance properties without their consent. He actually turned over management of the income-producing properties to them. He was trying, Mr. Dahl says he was trying to turn down the heat and couldn't do it. He said the one area of disagreement that they had was the prices on the sale of the real properties. And essentially, that's about the timing of the filing of the bankruptcies. Thank you, counsel. I have that section in the brief, if you would like to hear it. It's under the summary of argument in section 5 of the brief. Basically, it states that the appellants believe there are substantial grounds to request a reversal. Hold on. What page are you at?  Page 24. Okay. Appellants believe that there are substantial grounds to request a reversal of the dismissals of the involuntary bankruptcy cases. And then it goes on to say, because events occurring at 24 of the blue brief. I'm sorry. Yeah. The opening brief. What you're reading isn't – I don't see it. Okay. Section 5, summary – under summary of argument. I'm looking at page 24. Oh. Page 24. And there's a J in the middle of the page? Oh. See, my J is on the top of the page. I apologize. It's right underneath the J. Oh, I see. Next page. Yeah. Okay. Where they talk about appellants believe there are substantial grounds to request a reversal of the dismissals of involuntary bankruptcy cases. And then it goes on to basically say, because events have arisen, we're not requesting the dismissal at this point. We're just requesting reversal of the bad faith findings. And then it says right there on the sentence it begins with, nevertheless. I thought the bankruptcy appellate panel said that in its analysis of what the bankruptcy court did, it was a dismissal for failure to – well, let me give you the words so I don't misstate the facts here. Okay. As they analyzed it, it was a dismissal because there had not been proof that the debts weren't being paid as they became due under 303-H1. Yeah. The – their approach to this case was basically that the Okins were required in their opposition to the motion for – to dismiss to give all of the evidence with respect to all of the debts. Wait a minute. You're saying you want a reversal of the bad faith finding insofar as it was a basis for the dismissal. The bankruptcy appellate panel says at page 13 of its decision, page 2642 of the excerpt of record, thus the sole basis upon which the court dismissed the petition was that the petitioning creditors failed to establish a genuine issue of material fact as to whether Miles was generally paying his debts as they became due. Now, the implication of that for me is all I have to do is reach a judgment about whether that basis was such as to justify the bankruptcy appellate panel's decision, because we're reviewing the BAP. Yeah. And once we do that, we're all done.  That's just as to Miles. We're not reviewing the BAP. Yeah, that's correct, Your Honor. That's just as to Miles. That was the holding on Miles. There was no bad faith finding. But in any event, we're not reviewing the BAP. My understanding is that that's exactly what we're not reviewing. You're reviewing the bankruptcy court de novo. Right. But the BAP said, as to the other nine petitions, that petitioning creditors did not establish a genuine issue of fact as to whether the alleged debtors were generally paying their debts or whether they filed the petitions in bad faith. So they, BAP saw it as two grounds, as did the bankruptcy court. Correct. And I would like to, with respect, again, I believe the case law in the Ninth Circuit is very clear with respect to the burden of production on the moving party in a summary judgment proceeding. They, and again, and I know that the Court may disagree with me on this, but I believe that they have more, they have to do more, especially when it's bad faith, when they have the burden of persuasion with respect to bad faith. You won with respect to Miles. You obviously put in more evidence with respect to Miles. I mean, you didn't get bad faith with respect to Miles as an individual. Right. That's correct. Okay. So that, you know, to that extent, you sort of, you prevail on that issue. Why do you think that was? Because you have more evidence? Yeah. No. See, that's exactly, Your Honor. I mean, that's the irony of this case. The only evidentiary hearing was in the Miles case. Right. And in the Miles case, the Court came with all kinds of conclusions, that the Oakland reasonably relied on their attorneys in filing these, in filing these bankruptcies, that the bankruptcy, that the ---- What you're saying was that you had grounds to, or you had not, you had a good faith reason to believe that the Miles bankruptcy was okay, even though you, it turned out you were wrong, because you couldn't come up with the evidence. And he put in enough evidence to prevail on the judge's summary judgment. But you didn't put any evidence in as to the other nine companies that you sought to ---- But this ---- Exactly, Judge Brewer. I hear exactly what you're saying. And this is my dilemma. It's because if the moving party has the burden of persuasion in proving bad faith, they have to have something in their moving papers so that we can respond to it. The only thing they had in their moving ---- Did you put in any evidence to show that you had done any reasonable investigation on the nine companies? Sure. I mean, there was lots of evidence with respect to ---- No, I don't think we needed to. But there was evidence ---- Aside from what you needed to, that's a separate issue. Separate issue. You were just, you didn't have to. Sure. And they insist you did. Let's leave that aside for now. Okay. And what evidence did you put in on the other nine? Well, all of the partnerships were negative cash flow. In other words, none of them were making any money. They were all commingled. All of the ---- Negative cash flow on real estate, as I remember when I was in practice, is it's commonly priced to generate negative cash flow, but tax benefits that more than offset that. Well, but that, the Okins were not required to continue to put capital contribution to pay the debts of the partnerships. It wasn't the partnerships that were paying the debts. It was the partners, and any time they didn't want to pay the debts anymore, they didn't have to. There was no partnership agreement requiring capital contributions. These were all negative cash flows. They weren't paying their debts to become due. And all of the income of the partnerships were all commingled together. He was commingling all the partnerships. Why does that have to do with anything? I mean, it has a lot to do with a lot of other things. Yeah. Why does that have to do with this? Well, because if you're going to say that the alleged debtor is paying their debts to become due, that may not be true. It may be another entity that's paying debts. Loans that are being taken in by SFI. SFI had no assets. SFI had no income. SFI had nothing. And it was still taking in loans. And what they were doing was just making interest payments. Well, if it's taking in loans, somebody must think they're good for the money. Well, people that don't know that SFI doesn't have any assets and people that don't know that SFI doesn't have any income, doesn't have any business, same thing with Sizer. Same thing. No business. It was a large debt that was owed. With all the open partnerships, all of them were negative cash flow. There was no – I remember looking at these things for investment purposes, actually, in the 80s. Everything was negative cash flow if it was real estate because the depreciation generated deductions that were worth so much more than that. So the price of real estate always generated negative cash flow in an investment. I don't know if it's like that now, but I don't see where that matters as much as you're making it out to. Well, it does matter in the sense that they're not paying their debts to become due. If they're not paying them. Well, sure. I mean, the only people who would – for instance, once these things were dismissed, Markita was put into bankruptcy twice. Your average high-income lawyer in the early 80s, as I remember, would invest in some depreciable real estate where there was negative cash flow and he had to put money in every month to pay the mortgage that was more than he'd get from the rents because of the deductions. Yeah, but there was no depreciable assets here. Doctors would do the same thing then. There was no depreciable assets here. I mean, it wasn't like they were getting those kinds of tax write-offs. This was investments. These were investment properties. These were properties that were supposed to be growing in capital gains. And then they were supposed to be sold at some time. And Mr. Miles, you know – Did they generate depreciation? They weren't improved real estate? Not that I'm aware of. They were just fair land? Not that I'm aware of. I mean, they weren't income – they were not income properties. I mean, there was – the income properties they were getting – so there's nothing to depreciate. The income properties they were getting were so little and everything was being – Were they fair land or developed? A lot of it was raw. Some of it was developed. There was a few pieces developed. But the point that I'm trying to make is that there was so much commingling and fraudulent transfers of assets that they did not – I mean, with respect to what they – what they – Commingling is bad if it's a trust. Are you talking about trusts? Well, if – It's bad if it's a lawyer's trust fund. Well, no, it's – no, it's commingling with respect to alter ego issues. I mean, if – if Miles is commingling his personal assets with his corporations, there's an alter ego problem. That's what the State court found, that PVPR was the alter ego problem. But that's – and it's hard for me to understand what that has to do with this question. Well, if it is an alter ego problem, then all the debts of PVPR and all the debts of Miles would be put together. And if they're not paying the debts of PVPR, they're not paying the debts of Miles. And so it becomes – you know, it becomes an issue with respect to if they're paying their debts, it becomes due. With respect to the reliance on their attorneys, the record is very clear. The record basically says that it was the attorney's idea to file an involuntary petition. The Okins, all they had to do was lose. May I ask you something? How much money is at stake in terms of the damages? $8 million. $8 million? $8.1 million. They're claiming $8.1 million. And how much money did you win in the State court? About $12 million. Okay. But now – And I don't suppose you guys can reach $12 million. Well, I would love to, but don't forget that there are – well, there is case law out there that don't allow setoffs. So they may go for the damages, even though the Okins completely relied on their attorneys with respect to filing this. It wasn't their idea. They didn't want to have the – all they had to do was lose. One reason I'm sort of disquiet with determining the bad faith issue now when it's only real consequences on the damages issue is that we don't have a final judgment on the damages. I have no sense of what the damages would be for. What's the $8 million for? Well, I agree, Your Honor. I don't think there are any damages, truly, because – I understand that, but they're saying something. And we're really – to me, what we sort of have is an interlocutory appeal on the 303i issue. I mean, we don't know – we don't know the consequence of the bad faith determination at this point. Well, I just know that the case law basically says it's merged in the final order. Even if you have an interlocutory order, it's merged with the final. And if you don't appeal it at the final, you're not going to be able to appeal it later. So the judge issued a final judgment so that you could appeal it, so that they could just measure the – you know, evaluate the damages. Yes. They might not get the $8 million. No, they may not. They're probably doubtful they'll get $8 million for this. But it's still – I mean, if the damage issue, the 303i, is intended to stop frivolous filings of involuntary petitions, it seems counterproductive to put – to allege bad faith against the clients who are the innocent parties. I don't see that. I don't see that. Here's why. It's certainly evidence that bears on whether there's bad faith, whether the lawyer did it, or whether it was the client's idea. But, well, in domestic relations, divorce cases particularly, sometimes the client hires a junkyard dog because they want a junkyard dog. They get just what they're looking for. I agree. And it's the client's fault. But remember, in this case, that wasn't what happened. They didn't even pick their attorney. It was the State court litigation attorneys that picked Motti because he's been such an experienced – even the bankruptcy court himself regarded him as an expert bankruptcy attorney. That's not in the record. Yes, it is in the record. Where is it? It's on volume 10, page 2125, lines 18 through 25, where it says that Matthews, which is their State court litigation attorney, then asked Motti in March of 2001 to determine whether the filing of an involuntary petition might be appropriate. They went to Motti. Why did they go to Motti? Because Motti was in their suite. And because Motti has been in the bankruptcy court for years. The bankruptcy court judge even recognized him as a bankruptcy expert. So it's not as though they were choosing some high-in-the-sky attorney that was just going to do whatever the clients wanted. The clients wanted to continue the State court action. They were getting all the writs of attachment. They were being very successful. They were getting everything they wanted. They didn't want to stop. They didn't want to share the assets with the other creditors if they didn't have to. I mean, the reasons why the attorneys gave the Okins why they needed to file bankruptcy is because there were preferences being made. With all the commingling and the settlement of debts, all these preferences and the assets were dissipating. And you can't recover preferences with a receivership. Receivers can't recover preferences, especially in light of the latest Ninth Circuit ruling that preempts all of that preference area of law. So they thought that bankruptcy was the only way to get an equitable liquidation and dissipation of the assets to the creditors. We're way over our time, so we probably ought to call it to a conclusion unless my colleagues have further questions. Thank you, Counsel. Thank you. Okin v. Miles is submitted. Miles v. Okin is submitted. We'll hear Sheriff's Association v. County of Riverside. Your Honor, did you want to hear the Miles v. Okin? We heard them both. I told you at the beginning you had 20 minutes for both cases. Use it as you like. You're done. Thank you very much. Thank you, Your Honor. Needless to say, nothing is waived because it wasn't discussed at oral argument. Everything is in the briefs. I'm sorry. I missed that, Your Honor. I said needless to say, nothing is waived just because it was not discussed orally during the argument. Everything in the briefs is part of the arguments. Thank you. Thank you, Your Honor. Thank you.
judges: Kleinfeld, Wardlaw,berzon